**2007 BNH 041**
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>Maryellen Gagne,<br>       Debtor | Bk. No. 07-10047-JMD<br>Chapter 13 |
| Maryellen Gagne,<br>       Movant | |
| v. | Objection to Claim No. 6 |
| Countrywide Home Loans, Inc.,<br>       Respondent | |

*Mary Frances Stewart, Esq.*
*Concord, New Hampshire*
*Attorney for Debtor/Movant*

*Charles W. Gallagher, Esq.*
*Haughey, Philpot & Laurent, P.A.*
*Laconia, New Hampshire*
*Attorney for Respondent*

## MEMORANDUM OPINION

### I. INTRODUCTION

The Court has before it the Debtor's Objection to Amount of Secured Arrearage and Motion to Determine Amount of Allowed Secured Arrearage of Countrywide Home Loans, Inc. under 11 U.S.C. § 506(b) and 1322(e) (Doc. No. 26) (the "Objection") and the response thereto filed by Countrywide Home Loans, Inc. as servicing agent for the Bank of New York ("Countrywide") (Doc. No. 28) (the "Response"). This Court has jurisdiction of the subject

matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

On or about December 29, 2003, Maryellen Gagne (the "Debtor") and her father purchased property in Strafford, New Hampshire (the "Property") as joint tenants with the right of survivorship. The Debtor and her spouse moved into the Property at the time of purchase and since that date the Property has been their primary residence. In January 2004, the Debtor's father quitclaimed his interest in the Property to his daughter. On or about January 24, 2004, as the sole owner of the Property, she granted a mortgage to Countrywide's predecessor-in-interest in the amount of $50,000.00 (the "First Mortgage") and released her homestead exemption. The Debtor's husband also signed the First Mortgage releasing his homestead exemption. On or about October 18, 2004, the Debtor refinanced with Countrywide in order to obtain additional funds for work on the Property (the "Refinanced Mortgage"). The First Mortgage was discharged on the same date. The Debtor signed the Refinanced Mortgage in the amount of $90,000.00 and again released her homestead exemption. The Debtor's husband was not required to sign the Refinanced Mortgage despite informing Countrywide's closing agent that he was the Debtor's spouse and indicating his willingness to do so.[1]

---

[1] At the hearing on the Objection, copies of the applications for the First Mortgage and the Refinanced Mortgage were entered into evidence by agreement of the parties. In the application for the First Mortgage, the Debtor checked a box indicating that she was married. The corresponding box in the application for the Refinanced Mortgage was checked to indicate that the Debtor was unmarried. The Debtor testified that she had completed the application for the First Mortgage herself, but that the

2

After the Debtor obtained funds from the Refinanced Mortgage, the Debtor defaulted on her obligations to Countrywide.  On January 10, 2007, she filed for bankruptcy under chapter 13 of the Bankruptcy Code.  Countrywide filed a proof of claim setting forth a total claim of $120,628.66 as of the petition date.  Countrywide asserts a prepetition arrearage totaling $31,413.45 and consisting of $9,420.55 for seventeen monthly payments that were missed, $256.50 in property inspection fees, $8,544.54 in escrow shortage, and $13,191.86 in attorney's fees and costs, which include $12,091.86 for foreclosure attorney's fees and costs related to five foreclosure attempts, $950.00 for bankruptcy attorney's fees and costs incurred previously, and $150.00 in bankruptcy attorney's fees and costs incurred preconfirmation.  The parties have not agreed to the Property's value as of the petition date.  The Debtor scheduled the Property at a value of $195,000.00.  Countrywide asserts that as of the petition date the Property was worth $124,000.00 and, as of April 11, 2007, the Property was worth $135,900.00.

## III. DISCUSSION

The Debtor objects to Countrywide's claim and seeks a determination by the Court that Countrywide's arrearage claim shall not include its attorney's fees and costs and, therefore, the Debtor shall not be required to pay these amounts through her chapter 13 plan in order to cure the arrearage on the Refinanced Mortgage.  Countrywide argues that the Debtor's plan must

---

application for the Refinanced Mortgage was submitted over the telephone with her answering questions on what had changed in the ten months since the granting of the First Mortgage.  The Debtor testified that she did not see the application for the Refinanced Mortgage until the time of closing and, although she reviewed it before signing it, she was unaware that it contained an error regarding her marital status.  For the reasons set forth in this opinion, the Court does not need to determine the responsibility for or the legal effect of this error in the mortgage loan application.

3

provide for the payment of all arrearage amounts set forth in its proof of claim in order to be confirmed.

The Debtor makes several arguments in support of her position. First, the Debtor argues that because the homestead right of her spouse was not released, Countrywide holds an undersecured claim. The Debtor correctly states that under New Hampshire law individuals' homestead rights cannot be encumbered absent a document signed by them releasing their homestead. Chase v. Ameriquest Mortgage Co., 155 N.H. 19 (2007). Under New Hampshire law, the Debtor's spouse has a homestead right in the amount of $100,000.00. NH RSA 480:1. The Debtor contends that since the Debtor's spouse did not sign the Refinanced Mortgage to release his homestead right, the value of the Property securing the Refinanced Mortgage must be reduced by $100,000.00, rendering Countrywide an undersecured creditor.

Second, the Debtor argues that Countrywide must meet the requirements of both 11 U.S.C. §§ 506(b) and 1322(e). According to the Debtor, as an undersecured creditor, Countrywide would not be entitled to interest, costs, fees and expenses as part of its allowed claim under § 506(b). The Debtor argues that if these elements of Countrywide's claim cannot be part of its claim under § 506(b), then these elements cannot be part of its secured arrearage claim. Lastly, the Debtor argues that the doctrine of equitable subrogation, which might require the Debtor to pay Countrywide at least the amount Countrywide paid to satisfy the First Mortgage, does not apply. Countrywide disagrees with the Debtor's arguments and analysis.

A.  **Chapter 13 Plan Cure Payments Under the Bankruptcy Code**

In order to determine the amount that the Debtor must pay to cure the arrearage owed to Countrywide through her plan, the Court must first examine various provisions of the Bankruptcy Code. Section 506(b) of the Bankruptcy Code provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provide under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). "Under this section of the Bankruptcy Code, a secured claim may include interest, reasonable fees and costs related to a default only if the creditor is 'oversecured' which means that the value of the collateral is greater then the value of the creditors's claim." In re Thompson, 372 B.R. 860, 862 (Bankr. S.D. Ohio 2007).

Section 1322(e) of the Bankruptcy Code provides:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e).

In support of the Debtor's position that both §§ 506(b) and 1322(e) apply, the Debtor cites a case from Ohio, In re Evans, 336 B.R. 749 (Bankr. S.D. Ohio 2006). In the Evans case, the court found the language of § 1322(e) ambiguous in its application to undersecured creditors and, therefore, it conducted a review of the legislative history behind the enactment of § 1322(e) as part of the 1994 Bankruptcy Reform Act and came to the conclusion that § 1322(e) supplements the requirements of § 506(b) but does not supplant them. Id. at 753-55. For that reason, the court disallowed the fees and costs included in the mortgagee's arrearage claim as the mortgagee was undersecured.

The Court is not persuaded by the Evans case. In the Court's view, the language of § 1322(e) is unambiguous. "When the language of a statute is clear, there is generally no reason to search behind its words for a contrary intent." Thompson, 372 B.R. at 865. For that reason, the

Court concludes that § 506(b) has no applicability in the cure situation in which a debtor is merely keeping the original contract in place and bringing it up to date.  See Thompson, 372 B.R. at 863-64; 8 Collier on Bankruptcy ¶ 1322.18 (Alan N. Resnick & Henry J. Sommer eds. 15th rev. ed. 2007).  Thus, "[w]hen a debtor seeks to cure a prepetition default or arrearage on a long-term debt over the life of a Chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(5), the amount of the arrearage that must be cured is determined by § 1322(e)."  Thompson, 372 B.R. at 862-63.

Accordingly, the language in § 1322(e) directs the Court not to be concerned with the status of Countrywide's claim as undersecured or oversecured under § 506(b).  For purposes of determining the correct cure amount in chapter 13, the Court need not consider whether, after foreclosure, Countrywide might have to pay the non-debtor spouse his homestead exemption.  Rather, the Court must follow the dictates of § 1322(e) to determine the cure amount that the Debtor must pay through her chapter 13 plan to obtain confirmation.

Pursuant to the explicit terms of § 1322(e), the amount necessary to cure a default is to be determined "in accordance with the underlying agreement and applicable nonbankruptcy law." "It is evident that § 1322(e) is intended to put the mortgagee in the same position it would be in if the borrower were not in bankruptcy."  In re Taylor, No. 02-10695, 2003 WL 22282173, at *4 (Bankr. D. Vt. Oct. 1, 2003).  "Under § 1322(e), in order to be a mandated component of the cure through a chapter 13 plan:  (1) the attorney's fees must be required to be paid in order to cure the default under the original agreement; and (2) the collection of such attorney's fees cannot be prohibited by state law."  Id. at *3.  Thus, the inquiry for the Court is what sums must be paid in order to cure the default under the terms of Countrywide's mortgage and loan agreement and New Hampshire state law.

6

### B. Determining Mortgage Arrearage Cure Payments Under State Law

New Hampshire law provides:

> All lands conveyed in mortgage may be redeemed by the mortgagor, after the condition thereof is broken, by the payment of all demands and the performance of all things secured by the mortgage and the payment of all damages and costs sustained and incurred by reason of the nonperformance of its condition, or by a legal tender thereof, before foreclosure.

NH RSA 479:18. The Refinanced Mortgage contains a number of paragraphs that permit Countrywide to collect reasonable attorney's fees and costs associated with the preservation of its rights under the Refinanced Mortgage.[2]

As detailed above, Countrywide asserts a prepetition arrearage totaling $31,413.45 and consisting of $9,420.55 for seventeen monthly payments that were missed, $256.50 in property inspection fees, $8,544.54 in escrow shortage, and $13,191.86 in attorney's fees and costs, which include $12,091.86 for foreclosure attorney's fees and costs related to five foreclosure attempts, $950.00 for attorney's fees and costs incurred in the Debtor's prior 2006 bankruptcy case, and $150.00 in bankruptcy attorney's fees and costs incurred in this case preconfirmation. The

---

[2] Refinanced Mortgage at ¶ 9 ("If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy . . .), or (c) Borrower has abandoned the Property, then the Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankrupty proceeding."), at ¶ 14 ("Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to attorneys' fees, property inspection and valuation fees."), at ¶ 19 (In order to reinstate after acceleration, among other things, the Borrower must "pay[] all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under Security Instrument"), at ¶ 22 ("Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence."), and at ¶ 25 (providing for the reciprocity of attorneys' fees under NH RSA 361-C:2).

Debtor objects to including the legal fees and costs as part of the cure amount. Under the provisions of New Hampshire law, and the terms of the Refinanced Mortgage, Countrywide is entitled to include reasonable attorney's fees and costs in the computation of the amount necessary to cure the arrearage on the mortgage. New Hampshire law does not require a mortgagee to adjust the cure amount on account of an unreleased homestead right.[3]

The Debtor contends that it is patently unreasonable for a lender to generate legal fees and costs that exceed the amount of the arrearage while attempting to collect the arrearage. In other words, it was unreasonable for Countrywide to incur fees and costs of $13,191.86 in an attempt to collect $9,420.55 in past due mortgage payments. What is reasonable for attorney's fees and costs depends upon the facts and circumstances of each case. In this case, the amount of the fees and costs were incurred during <u>five</u> different foreclosure attempts and during a prior bankruptcy case that was apparently dismissed based upon the Debtor's failure to make timely chapter 13 plan payments. The Debtor has not argued that the time, hourly rates, or expenses were unreasonable when provided or incurred. The Debtor's sole argument for unreasonableness is based upon the absolute total as compared to the amount of the arrearage.

Based upon the history of Countrywide's actions to enforce its rights under the Refinanced Mortgage, the total amount of the fees and expenses claimed are not unreasonable. Accordingly, they may be included in determining the amount of the necessary cure payment under New Hampshire law.

---

[3] Countrywide also raised an argument that under principles of equitable subrogation, the husband's homestead rights were released to the extent that it paid the First Mortgage with the proceeds of the Refinanced Mortgage. Under the Court's application of § 1322(e), it need not consider Countrywide's claim of equitable subrogation.

**IV. CONCLUSION**

For the reasons discussed above, the Court overrules the Objection. The Debtor is required to pay $31,413.45, which includes $13,191.86 in attorney's fees and costs, through her chapter 13 plan in order to cure the arrearage on the Refinanced Mortgage. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   November 21, 2007                     /s/ J. Michael Deasy
                                              J. Michael Deasy
                                              Bankruptcy Judge